

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

February 13, 1939

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-212
Re: Payment of hospitalization and
medical fees of prisoners from the
Law Enforcement Fund of the Execu-
tive Department.

Under date of January 26, 1939, you request the opinion
of this Department as to whether an attached bill of Drs. Wooten
& Goddard, in the amount of $493.00 for hospitalization and medi-
cal services rendered one Jack Watkins, a prisoner, is a legal
charge against the Law Enforcement Fund of the Executive Department
of this State.

Inasmuch as your inquiry rests upon a question of fact, we
quote from a letter from Homer Garrison, Jr., Director of the Depart-
ment of Public Safety to you, submitted with your letter:

"You are advised that Jack Watkins, wanted
on two habitual criminal indictments, car theft
charges, and for the shooting of Highway Patrol-
man Tom Gassaway, was shot by a private citizen
while attempting to burglarize a place in Navar-
ro County, Texas.

"Watkins was wanted on habitual criminal in-
dictments in Milam County and had not been in-
dicted in Navarro County when the Texas Highway
Patrol was requested to transport him to Milam
County for trial on habitual criminal indictments.
This request was complied with after the Department
of Public Safety had been advised that Jack Watkins
was in good condition and was able to be moved. Be-
fore reaching Milam County, Watkins' condition be-
came critical and Milam County authorities had no
place where a prisoner in such a condition could be
properly safeguarded. So it became necessary for
the Patrol to place this man in Seton Infirmary,
Austin, Texas, and to provide a guard for him until

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

such time as his condition would permit him to be removed to the Texas State Penitentiary Hospital at Huntsville, Texas. This department could not let the man die for lack of medical attention that the law of humanity demands be accorded even to notorious public enemies."

At the time the account in question was incurred for hospitalization and medical fees to save the life of Jack Watkins, we shall assume, for the purpose of this opinion, that the said Watkins was properly under arrest, as a prisoner, and was being transported from Navarro County to Milam County by the Texas Highway Patrol, to be tried on habitual criminal indictments pending in the latter county. Members of the Texas Highway Patrol are given such authority under Article 4413 (12), subdivision (4), Vernon's Annotated Civil Statutes, which provides, in part, as follows:

"In addition they shall be, and they are hereby clothed with all the powers and authority which is in this Act or otherwise by law given to members of the Texas Ranger force."

To determine the extent of such authority, we refer to Article 4413 (11), subdivision (4), Vernon's Annotated Civil Statutes, which confers upon Texas Rangers the following rights and duties in connection with the execution of criminal process:

"The officers shall be clothed with all the powers of peace officers, and shall aid in the execution of the laws.

"They shall have authority to make arrests, and to execute process in criminal cases; and in civil cases when specially directed by the judge of a court of record; and in all cases shall be governed by the laws regulating and defining the powers and duties of sheriffs when in the discharge of similar duties; except that they shall have the power and shall be authorized to make arrests and to execute all process in criminal cases in any county in the State. All officers operating by virtue of this Act shall have the authority to make arrests, as directed by warrants, and without a warrant under the conditions now authorized by law, and also in all cases when the alleged offender is traveling on a railroad, in a motor vehicle, aeroplane or boat. When any of said force shall arrest any person charged with a criminal offense, they shall forthwith convey said person to the county where he so

stands charged, and shall deliver him to the
proper officer, taking his receipt therefor,
All necessary expenses thus incurred shall be
paid by the State."

Moreover, we point to Article 36, Code of Criminal Pro-
cedure, which includes the Texas Ranger force within the defini-
tion and scope of the term "peace officers".

Consequently, from the foregoing statutes, it is estab-
lished that the powers and duties of the members of the Texas
Highway Patrol, in connection with the execution of criminal pro-
cess, and the custody and safe-keeping of prisoners thereunder,
will be the same as the powers and duties conferred upon sheriffs,
and other peace officers, under governing statutes and the decisions.

It is the well established general rule that the duty a
sheriff or other peace officer owes to the state or to the public
to safely keep a prisoner committed to his custody and deliver him
over to the proper authorities at the proper time, is no more com-
pulsory than is the duty he owes the prisoner himself to exercise
reasonable and ordinary care to protect his life and health. These
two duties are co-extensive and arise by virtue of the custody of
such prisoner by such officer under criminal process.  21 R.C.L.,
p. 1173 (Prisons and Prisoners, Sec. 10).  Logan vs. U.S., 144 U.S.
263, 12 Sup. Ct. 617; 36 L. Ed. 429; Ex Parte Jenkins, 58 N.E.560;
State vs. Gobin, 94 Fed. 48.

Under the facts outlined in your letter, it is our opinion
that each of these two co-existing duties required that the officers
who had Jack Watkins in custody see to it that necessary and proper
medical attention and hospitalization be promptly afforded such
prisoner.  As regards the duty of such officers to the state, or to
the public, in the safe delivery of the prisoner over to the authori-
ties of Milam County for trial on pending indictments, the furnishing
of such medical care and hospitalization as was necessary to preserve
the life of this prisoner was clearly in line with such duty.  Had a
rescue or delivery of the prisoner been attempted while he was being
transported in the custody of these officers, or had a mob attempted
to take the prisoner's life or do him bodily injury, it would have
been the clear duty of such officers to incur any expense necessary
to retain custody of him, and to save his life, in order that he
might be delivered over for trial.  By the same token, a duty rested
upon the officers in the instant case to preserve the life of the
prisoner from the illness which threatened it in order that he might
be brought to trial in Milam County for an offense against society.

But considering this question solely from that other phase
of a peace officer's duty to the prisoner, himself, to exercise rea-
sonable and ordinary care to protect his life and health, we are of

the opinion that the action of the Patrolmen in this case was amply justified by the facts. The condition of the prisoner, which became so critical as to require medical attention during his transportation, was not brought about by the negligence of the Texas Highway Patrol in taking him from Navarro County, or by any act or ommission on the part of said Patrol while he was in custody. Not to have furnished medical attention under the circumstances would have been a wanton and reckless disregard of the common dictates of humanity.

But despite the prisoner's critical and insolvent condition, and this faithful discharge of the duty resting upon the State Highway Patrol to the State and to the prisoner, the claim presented with your letter cannot be by you allowed and paid, in the absence of some statute so providing; because it is the general rule that in the absence of some express provision of the law, the public is not liable to a physician or surgeon for services rendered a prisoner at the instance of a peace officer, even though such prisoner is insolvent and unable to pay for such attention. 21 R.C.L. 1175; Nolan vs. Cobb County, 81 S.E. 124, 50 L.R.A. (N.S.) 1223, and notes.

That the Legislature of Texas, in recognition of this duty of a peace officer to preserve the life of his prisoner, intended to provide for the payment of expenses necessary to this end, is evidenced by Article 1040, Sec. 3, Code of Criminal Procedure, providing as follows:

"For the safe keeping, support and maintenance of prisoners confined in jail or under guard, the sheriff shall be allowed the following charges:

"3. For necessary medical bill and reasonable extra compensation for attention to a prisoner during sickness, such an amount as the commissioners court of the county where the prisoner is confined may determine to be just and proper."

The prisoner, Jack Watkins, was clearly under guard, within the meaning of the above statute, so as to make necessary medical bills a proper claim against Milam County, had the prisoner been in the custody of the sheriff thereof.

But, under Articles 4413 (12), and 4413 (11), Vernon's Annotated Civil Statutes, Highway Patrolmen were clothed with all the power and authority of such sheriff. If the question be made that the prisoner should therefore have been taken to the jail of Milam County in order that proper medical attention might have been afforded, and claim therefor paid under Article 1040, Code of Criminal

Procedure, hereinabove quoted, we say that the facts before us reveal that Milam County did not have proper facilities for this purpose, and the Texas Highway Patrol was justified, in this extreme emergency, in taking the prisoner to the nearest and best place for treatment and safe keeping.

As illustrative of this discretion to waive statutory formalities in emergencies, we cite the case of Lamar vs. Pike County, 30 N. E. 912, holding that a county was liable for medical services rendered by a physician summoned by the jailer to attend a prisoner in an emergency not admitting of the four hours' delay necessary to procure the attendance of the secretary of the board of health, who resided twelve miles away from the jail, notwithstanding the statute provided that the latter should render such medical services as were required by prisoners. The court said:

"In the case before us it was the duty of Smith, the jailer in charge of the prisoner and acting for the sheriff, to summon a competent physician under the existing emergency to treat the prisoner, and thereby save his life, if such could be done. It would have been inexcusable neglect on the part of the jailer to have waited four hours to summon the secretary of the board of health, twelve miles distant, when the necessary medical aid could be obtained speedily and near at hand, and was essential to save the life of the prisoner. . . . We cannot believe that the law intended where a man was in jail, and in need of medical service under the emergency existing in this case, where the board of county commissioners had appointed a secretary of the board of health, whose duty it was in such cases to render such medical assistance, but whose residence was so remote from the county jail that he could not be procured in time to render the aid needed, that the prisoner should be left to suffer and perhaps die, and that the county would not be liable for the services thus rendered by a physician under the employment of the jailer having the prisoner in charge."

Furthermore, by the express terms of Article 4413 (11) Vernon's Annotated Civil Statutes, it is contemplated that the State rather than the county shall pay expenses necessarily incurred by Highway Patrolmen in line of duty. Subdivision (4) of this Article outlines the powers and duties of Rangers in the execution of criminal process, and provides: "All necessary expenses thus incurred shall be paid by the State." As this statute applies to members of the Texas Highway Patrol, and since the medical and hospital ex-

penses in question were reasonably and necessarily connected with the execution of criminal process, it follows that such expenses should be paid by the State.

This account has been approved for payment out of the appropriation for the Executive Department, under General Laws, Forty-fifth Legislature, p. 1420, appropriating $9,000.00 under Subdivision (14) for "payment of rewards and other expenses necessary for enforcement of the law".

For the reasons hereinabove set forth, it is our opinion that the claim in question undoubtedly constitutes an expense "necessary for the enforcement of the law" within this appropriation, and you are accordingly advised that same is a proper charge against such appropriation.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By (Signed) Pat M. Neff, Jr.
Pat M. Neff, Jr.
Assistant

PMN:FG

APPROVED:

ATTORNEY GENERAL OF TEXAS


O. K.
GRL